IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRED DWAYNE GILBERT,

        Petitioner,               No. 2: 09-cv-2897 KJN P

    vs.

GARY SWARTHOUT,

        Respondent.         ORDER

_____/

I. Introduction

        Petitioner is a state prisoner proceeding without counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2008 conviction for possession of cocaine base for sale (Cal. Health & Saf. Code § 11351) and petty theft with a prior (Cal. Penal Code § 666).  Petitioner is serving a sentence of seven years.

        This action is proceeding on the original petition filed October 16, 2009.  Petitioner raises two claims: 1) alleged violation of the Fourth Amendment; and 2) alleged violation of Brady v. Maryland, 373 U.S. 8 (1963).

        Both parties have consented to the jurisdiction of the undersigned.  After carefully considering the record, the undersigned orders the petition denied.

////

1

II.  <u>Standards for a Writ of Habeas Corpus</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75

1   (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its

2   independent review of the legal question, is left with a 'firm conviction' that the state court was

3   'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas

4   relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

5   decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

6           The court looks to the last reasoned state court decision as the basis for the state

7   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

8   decision, "and the state court has denied relief, it may be presumed that the state court

9   adjudicated the claim on the merits in the absence of any indication or state-law procedural

10  principles to the contrary." Harrington, 131 S. Ct. at 784-85 (2011).  That presumption may be

11  overcome by a showing that "there is reason to think some other explanation for the state court's

12  decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

13          Where the state court reaches a decision on the merits but provides no reasoning

14  to support its conclusion, the federal court conducts an independent review of the record.

15  "Independent review of the record is not de novo review of the constitutional issue, but rather,

16  the only method by which we can determine whether a silent state court decision is objectively

17  unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

18  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

19  basis for the state court to deny relief. Harrington, 131 S. Ct. at 784.  "[A] habeas court must

20  determine what arguments or theories supported or, . . . could have supported, the state court's

21  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

22  arguments or theories are inconsistent with the holding in a prior decision of this Court.  Id. at

23  786.

24  III.  Factual Background

25          The opinion of the California Court of Appeal contains a factual summary.  After

26  independently reviewing the record, the undersigned finds this summary to be accurate and

adopts it herein:

On August 20, 2007, Officer August Johnson, a member of the bicycle patrol unit of the Sacramento Police Department, received a phone call from an off-duty probation officer named Josh Paris. Paris informed Officer Johnson that he was at the corner of 4th Street and K Street, witnessing a man pushing a bicycle eastbound through Westfield Plaza who had just unscrewed a bicycle light from the handlebars of another bicycle that was locked to a bicycle rack and then attached the light to the handlebars of the bicycle he was pushing. Paris described the man as "a male Black adult in his 40s wearing a straw hat, a white T-shirt, and short blue jeans shorts ... [with] a purple backpack on." Officer Johnson, while on the phone with Paris, rode his patrol bicycle westbound through the mall and quickly spotted defendant, who matched the description.

Officer Johnson cut off defendant's path with his patrol bicycle and told him to stand next to the Gap store window; defendant complied. Johnson then asked defendant if he had any weapons. Defendant responded that he had "something in his backpack." As defendant started to put his hands in his front pockets, Officer Johnson told him to keep his hands out of his pockets and slid the backpack off defendant's back and placed it on the ground. Defendant was speaking rapidly and again tried to put his hands in his pockets. Believing defendant to be a potential danger to himself and others walking through the mall, Officer Johnson placed defendant in handcuffs and conducted a frisk for weapons.

As Officer Johnson patted down the outside of defendant's right front shorts pocket, he felt "a ping-pong ball size[d] object ... [with] small pea size[d] hard objects ... [that] rolled off each other like they were covered with some sort of plastic." Based on his training and experience, including over 200 hours of narcotics training and experience in over 50 investigations involving possession of cocaine base for sale, Officer Johnson believed the object in defendant's pocket to be cocaine base. Officer Johnson asked defendant what was in his pocket; defendant responded, "some cocaine," and explained that he had "relapsed last night." Johnson retrieved the object, a clear plastic baggie containing 21 individually wrapped pieces of cocaine base, from defendant's pocket. Officer Johnson then ran defendant's name and discovered that he was on searchable probation. A search of the remainder of defendant's belongings revealed three cell phones, a wallet containing $107, two screwdrivers, a flashlight, and an open box containing 47 sandwich baggies.

Probation Officer Paris arrived as Officer Johnson was talking to defendant. Paris confirmed that the bicycle light on defendant's bicycle was the same light that had been removed from the locked bicycle on 4th and K. After defendant was formally arrested, Officer Johnson went to the victim's bicycle and placed a

> Sacramento Police Department information card on the handlebars.
> Later in the afternoon, the owner of the bicycle, Christina Riker,
> called and confirmed that the light belonged to her.

(Dkt. 11, at 27-29 of 45.)

IV. Discussion

      A. Waiver of Claims

      Petitioner plead no contest to the charges against him.  (Reporter's Transcript ("RT") at 232-33.)  As set forth in the discussions below, both of petitioner's claims involved alleged violations of his rights which occurred prior to the entry of his plea.

      "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"), overruled on other grounds in Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (superseded on other grounds by AEDPA) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations).  Under these circumstances, a prisoner may attack only the voluntary and intelligent character of his guilty plea in habeas proceedings.  Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992). Under California law, a plea of no contest is equivalent to a guilty plea.  California Penal Code § 1016; People v. Mendez, 19 Cal.4th 1084, 1094-95 (Cal. 1999).

      Petitioner waived his right to bring the claims raised in the instant petition, which do not concern the voluntariness of his plea, when he plead no contest.[1]  In any event, as will be

---

[1] Respondent did not raise this argument.

1   discussed herein, petitioner's claims are without merit.

2            B. <u>Alleged Fourth Amendment Violation</u>

3            Petitioner argues that the trial court improperly denied his motion to suppress.  In

4   connection with this claim, petitioner also argues that the trial court erred in refusing to consider

5   his fourth motion to suppress, filed by his newly appointed counsel.  The California Court of

6   Appeal denied these claims for the reasons stated herein:

7            I.  The Suppression Motion

8            Defendant contends the trial court erred in denying his suppression
     motion. Specifically, defendant claims (1) the People failed to
9    make a <u>Harvey-Madden</u> showing (<u>People v. Madden</u> (1970) 2
     Cal.3d 1017 (<u>Madden</u>); <u>People v. Harvey</u> (1958) 156 Cal.App.2d
10   516 (<u>Harvey</u>)), (2) the detention was unlawful because Officer
     Johnson lacked a reasonable suspicion that defendant had
11   committed or was about to commit a crime, (3) the frisk for
     weapons was unlawful because Officer Johnson lacked a
12   reasonable suspicion that defendant was armed, and (4) removal of
     the cocaine base from defendant's pocket exceeded the scope of
13   the frisk for weapons.

14   "The standard of appellate review of a trial court's ruling on a
     motion to suppress is well established. We defer to the trial court's
15   factual findings, express or implied, where supported by substantial
     evidence. In determining whether, on the facts so found, the search
16   or seizure was reasonable under the Fourth Amendment, we
     exercise our independent judgment. [Citations.]" (<u>People v. Glaser</u>
17   (1995) 11 Cal.4th 354, 362; <u>see also People v. Lindsey</u> (2007) 148
     Cal.App.4th 1390, 1395; <u>People v. Coulombe</u> (2000) 86
18   Cal.App.4th 52, 55-56.)

19   We will address, and ultimately reject, each of defendant's
     contentions in turn.
20
     A. The <u>Harvey-Madden</u> Claim
21
     Citing <u>Madden</u>, supra, 2 Cal.3d 1017, and <u>Harvey</u>, supra, 156
22   Cal.App.2d 516, defendant asserts that because "[O]fficer Johnson
     based the detention solely upon information provided by
23   [Probation Officer] Paris, the prosecution was required to produce
     Paris to testify as to what he observed." The law is to the contrary.
24
     It is well-settled under California law that an officer may make an
25   arrest "based on information and probable cause furnished by other
     officers." (<u>People v. Ramirez</u> (1997) 59 Cal.App.4th 1548, 1553
26   (<u>Ramirez</u>), citing <u>Remers v. Superior Court</u> (1970) 2 Cal.3d 659,

666; <u>Madden</u>, <u>supra</u>, 2 Cal.3d at p. 1021; <u>People v. Lara</u> (1967) 67 Cal.2d 365, 374; <u>People v. Alcorn</u> (1993) 15 Cal.App.4th 652, 655; <u>People v. Poehner</u> (1971) 16 Cal.App.3d 481, 486-487; <u>People v. Adkins</u> (1969) 273 Cal.App.2d 196, 198.) "These cases, however, require that when the first officer passes off information through 'official channels' that leads to arrest, the officer must also show [the] basis for his probable cause. In other words, the so-called '<u>Harvey-Madden</u>' rule requires the basis for the first officer's probable cause must be 'something other than the imagination of an officer who does not become a witness.' [Citation.]" (<u>Ramirez</u>, <u>supra</u>, 59 Cal.App.4th at p. 1553.)

However, as recently observed by the Court of Appeal, Fourth Appellate District in <u>People v. Gomez</u> (2004) 117 Cal.App.4th 531 (<u>Gomez</u>): "There is no requirement that the officer whose personal observations were relied upon for purposes of the probable cause determination actually testify to his or her observations. To the contrary, the <u>Harvey/Madden</u> rule merely precludes the prosecution from relying on hearsay information communicated to the arresting officer that is not sufficiently specific and fact based to be considered reliable." (<u>Id.</u> at p. 541, italics added.) In other words, the People must demonstrate that the information passed from one officer to another was " 'factual rather than conclusionary,' related 'specific and articulable facts,' was the product of personal observations by the informing officer, and was reliable." [Citations.]' [Citation.] Ultimately, the issue boils down to whether the latter officer's reliance on the information was reasonable. [Citation.]" ( <u>Id.</u> at p. 540.)

In this case, we do not hesitate in finding that Officer Johnson's reliance on the information provided by Probation Officer Paris was reasonable. Officer Johnson testified that Paris informed him that he was personally witnessing a man pushing a bicycle eastbound through the mall who had just unscrewed a bicycle light from another bicycle and then attached the light to the handlebars of the bicycle he was pushing. Paris provided a detailed description of the man, whom Officer Johnson quickly located and detained. The information provided by Officer Paris was certainly factual rather than conclusionary, related specific and articulable facts, was the product of Paris's own personal observations, and was undeniably reliable. (<u>Gomez</u>, <u>supra</u>, 117 Cal.App.4th at p. 540.) Notwithstanding defendant's unsupported assertion to the contrary, the People were not required to call Paris to testify as to what he observed.

B.   The Detention

Defendant's claim that Officer Johnson lacked reasonable suspicion to detain him is likewise without merit.

7

"To justify an investigative stop or detention, the circumstances known or apparent to the officer must include specific and articulable facts which, viewed objectively, would cause a reasonable officer to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person the officer intends to stop or detain is involved in that activity." (People v. Conway (1994) 25 Cal.App.4th 385, 388, citing In re Tony C. (1978) 21 Cal.3d 888, 893; People v. Souza (1994) 9 Cal.4th 224, 230.) "The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations .] In making our determination, we examine 'the totality of the circumstances' in each case." (People v. Wells (2006) 38 Cal.4th 1078, 1083.)

"Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." (Alabama v. White (1990) 496 U.S. 325, 330.) However, "[p]rivate citizens who are witnesses to a criminal act, absent some circumstances casting doubt upon their information, are considered reliable." (People v. Brueckner (1990) 223 Cal.App.3d 1500, 1504, citing People v. Ramey (1976) 16 Cal.3d 263, 269.) "Neither a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities." (Brueckner, supra, 223 Cal.App.3d at p. 1504.) Reliability is further "indicated where the informer's identity is known to the police, as the informer exposes himself or herself to potential liability for malicious prosecution or false reporting." (Id. at pp. 1504-1505.)

In this case, Probation Officer Paris witnessed defendant remove the light from a locked bicycle and place it on the bicycle he was pushing through the mall. He immediately called Officer Johnson and provided a detailed description of his observations. There are no circumstances casting doubt on the information. Indeed, Paris continued on the phone with Officer Johnson until defendant was detained and immediately approached both Johnson and defendant to confirm that the light in defendant's possession was indeed the light he witnessed defendant remove from the other bicycle. There can be no doubt that the information provided by Paris gave Officer Johnson reasonable cause to suspect that some activity relating to crime had taken place, i.e., theft of a bicycle light, and that defendant was involved in that activity. (See People v. Conway, supra, 25 Cal.App.4th at p. 388.)

C.  The Frisk

Defendant finally contends the frisk for weapons was unlawful because Officer Johnson lacked a reasonable suspicion that he was armed, and, if lawful, the removal of the cocaine base from

8

defendant's pocket exceeded the scope of such frisk. Again, we disagree.

As the Attorney General correctly points out, defendant's argument on this point "unaccountably omits two significant material and operative facts." First, prior to the frisk, Officer Johnson asked defendant if he had any weapons and defendant responded that he had "something in his backpack." Defendant then put his hands in his front pockets, and again tried to put his hands in his pockets after Officer Johnson told him not to do so. In light of the fact that this interaction between Officer Johnson and defendant occurred in a populated shopping mall, defendant's admission to possessing a weapon in his backpack and his repeated reaching for his pockets provided reasonable grounds to suspect that he was armed and dangerous. Second, defendant's argument conveniently overlooks the fact that he admitted in his written motion to suppress and in argument to the trial court on the motion that he gave his consent to be frisked for weapons. These statements amounted to a judicial admission, removing the issue of his consent to be frisked from the case. (Cf. People v. Pijal (1973) 33 Cal.App.3d 682, 697; People v. Peters (1950) 96 Cal.App.2d 671, 677; see 1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, § 100, pp. 802-803.)

Defendant's argument that Officer Johnson was not justified in removing the cocaine base from his pocket is likewise without merit. As the Attorney General again correctly points out, defendant "unaccountably manages to overlook still another salient fact." This time, defendant overlooks the fact that he admitted to Officer Johnson that he had "some cocaine" in his pocket due to the fact that he "relapsed" the night before. At this point, prior to removal of the cocaine from defendant's pocket, Officer Johnson possessed probable cause to arrest defendant for possession of cocaine and perform a warrantless search of his person incident to that arrest. "Probable cause to arrest exists when the facts and circumstances known to the arresting officer " 'warrant a [person] of reasonable caution in the belief that' an offense has been or is being committed [by the person to be arrested]." ' [Citations.]" (People v. Souza, supra, 9 Cal.4th at p. 230.) "An officer may thoroughly search an individual incident to a lawful arrest. [Citation.] Moreover, when the formal arrest follows quickly on the heels of the challenged search, it is not important that the search preceded the arrest rather than vice versa. [Citation.]" (People v. Avila (1997) 58 Cal.App.4th 1069, 1075.)

Here, the facts and circumstances known to Officer Johnson were sufficient to warrant a person of reasonable caution in the belief that an offense had been committed by defendant. He therefore had probable cause to arrest defendant and to conduct a warrantless search incident to that arrest. Accordingly, the search of defendant and seizure of the cocaine base from his pocket was valid on this ground regardless of whether the scope of the search went beyond

that authorized for a mere frisk.

II.  The Fourth Motion to Suppress

Defendant also contends the trial court erred in refusing to consider his fourth motion to suppress, filed by his newly appointed counsel, after three previous motions had been denied. Not so.

Additional Background Information

Defendant made his first appearance in this matter on August 22, 2007, and a public defender was appointed to represent him. On August 29, 2007, defendant's attorney explained to the court that the public defender's office faced an "overload" and asked that the matter be continued for two days. Defendant responded: "I would like to file a Marsden, a Faretta and represent myself pro per." Russell Miller, an attorney from the Conflict Criminal Defenders, then asked the court to pass the matter for a few minutes to allow him to confer with defendant concerning representation. The court agreed. After consulting with Miller, defendant agreed to accept appointment of a panel attorney, and to continue the matter for two days. However, defendant made clear that by agreeing to the short continuance he was not giving up his right to a speedy trial, and was reserving his right to file a Faretta motion at his next appearance.

On August 31, 2007, attorney Robert Martin, Jr., who was handed the file that morning but had not yet conferred with defendant, appeared on defendant's behalf. Defendant again indicated that he wanted to file a Faretta motion to represent himself because he had already prepared several motions he wanted to file immediately. Defendant was persuaded, however, to consult with his new attorney, after which he agreed to allow Martin to continue the representation. Martin then entered a plea of not guilty on defendant's behalf, scheduled the preliminary hearing for September 14, 2007, and gave notice that a motion to suppress evidence would also be heard.

On September 14, 2007, the matter came on for preliminary hearing. Martin explained to the court that, because he had also been assigned a "very large trial," he had been "somewhat neglectful" in filing several motions defendant had asked to be filed. Defendant initially agreed to a two-week continuance to allow Martin to review and file the requested motions. However, when the court explained to defendant that Martin would not necessarily be filing each and every motion, and when Martin further explained that he would not be filing any motions he considered to be frivolous, defendant withdrew his consent to the continuance and again indicated that he wished to represent himself. The court then explained to defendant the consequences of choosing to represent himself, after which defendant again

10

consulted with Martin, and then withdrew his <u>Faretta</u> motion and agreed to the continuance to allow Martin to review and file the requested motions.

On September 28, 2007, another attorney stood in for Martin while he was in another courtroom and explained to the court that Martin would be seeking to further continue the matter to October 19, 2007. Defendant responded: "I'd like to file a <u>Faretta</u> and go pro per." The matter was then sent to another department, where the court informed defendant that, rather than ruling on defendant's <u>Faretta</u> motion, the court could grant a <u>Marsden</u> motion and appoint another attorney to represent defendant. Defendant agreed to proceed with a <u>Marsden</u> motion, explaining that he was denied access to Martin, who had not returned his phone calls or responded to his letters. When Martin arrived, he agreed that there was a conflict and that it would be in defendant's best interest to have another attorney appointed to review the new discovery that had arrived that week, and to decide which of defendant's motions would be appropriate to file. Defendant responded: "I can't keep going up and down. I think it is best that I file a <u>Faretta</u> and go pro per and get into the law library." After the court explained to defendant his right to an attorney and the various consequences of representing himself, defendant signed a written <u>Faretta</u> waiver, and the court granted defendant's <u>Faretta</u> motion. Defendant then agreed to continue the preliminary hearing until October 19, 2007, so that he could file his motions.

Defendant immediately filed several motions, including a motion to suppress evidence pursuant to section 1538.5 of the Penal Code. Defendant's motion to suppress was heard concurrently with the preliminary hearing on October 23, 2007. The facts adduced during the hearing on the motion to suppress are fully set forth above; for the reasons stated in part I, ante, the motion was appropriately denied. The court also held defendant to answer on both charges leveled against him.

On November 9, 2007, the court again addressed defendant's motion to suppress, this time in conjunction with a motion to set aside the information pursuant to section 995 of the Penal Code and two motions to dismiss based on prosecutorial misconduct and police suppression of evidence. After brief argument on the motion, the court complimented defendant on his grasp of the Fourth Amendment, and denied the motion.

On December 31, 2007, scheduled to be the first day of defendant's jury trial, the court again considered and rejected defendant's motion to suppress, again in conjunction with the plethora of already-decided pretrial motions filed by defendant.

On January 2, 2008, prior to the swearing in of a panel of jurors, defendant asked the court to appoint counsel to represent him

during trial. As defendant explained: "I'm a layman at law, but I was forced into this position because my attorney would not file necessary motions for me. And now I find myself in a courtroom to whereas I'm not really familiar with none of this, and I'm just trying to do what I can." The court responded: "I did not, and do not at this point have any concerns, frankly, Mr. Gilbert, about your ability to represent yourself.... [Y]ou filed numerous motions, represented yourself at the preliminary hearing. And those motions, I have to say, contain all the relevant law indicating your ability to research and deal with the law." At this point, defendant indicated that he is a "certified schizophrenic of high level," that he was hearing voices, and that he requested psychiatric medication from the jail, but had yet to receive the medication. The court found defendant to be "competent to represent himself and that to make this motion at such a late stage of the proceedings is not timely." However, the court also ordered defendant to be examined by Dr. Gregory Sokolov, pursuant to section 730 of the Evidence Code, in order to determine whether the court should express a doubt as to his mental competency under section 1368 of the Penal Code.

On January 4, 2008, the court received a report from the psychiatric unit that did not address the issue of defendant's competence to stand trial, but did attach a copy of a jail psychiatric services initial screening assessment which indicated that defendant had complained of hearing voices and was previously taking medication for a psychiatric condition. In light of the screening assessment, and the fact that a jury panel had not yet been sworn, the court granted defendant's request for counsel.

Robert Martin, Jr., again became defendant's attorney. On April 2, 2008, Martin filed a 37-page motion to suppress on defendant's behalf. The trial court declined to reconsider the motion.

Analysis

"As a general rule, a defendant is allowed only one pretrial suppression motion under section 1538.5 in the superior court, and that court is without jurisdiction to hear a second motion. [Citations.]" (People v. Nelson (1981) 126 Cal.App.3d 978, 981.) "However, there are exceptions to that general rule barring reconsideration of suppression motions, including circumstances in which a defendant is denied the right to fully litigate the motion at a hearing." (People v. Smith (2002) 95 Cal.App.4th 283, 304, citing People v. Ramirez (1992) 6 Cal.App.4th 1583, 1589, fn. 4 ["Under the current law, a defendant is entitled to renew a suppression motion in the trial court ... where defendant was not afforded a full and fair opportunity to litigate the issues raised in the original motion"].)

In essence, defendant asserts that he was denied a full and fair opportunity to litigate the suppression motion because he

ineffectively represented himself during the hearing on the motion. However, a defendant may not assert on appeal that he inadequately or ineffectively represented himself "once he has elected to 'shoot craps' in the trial court and appear in propria persona." (People v. Harris (1977) 65 Cal.App.3d 978, 987-988; see also People v. Barnum (2003) 29 Cal.4th 1210, 1215 ["a defendant who chooses to represent himself or herself after knowingly, intelligently, and voluntarily forgoing the assistance of counsel assumes the risk of his or her own ignorance"].)

However, in a creative attempt to circumvent the consequences of his decision to represent himself, defendant asserts that he was forced to represent himself in order to assert his right to a speedy trial, and therefore, his decision to represent himself was not voluntary. Defendant relies on People v. Bolton (2008) 166 Cal.App.4th 343. There, without sufficient evidence of a conflict, the trial court relieved Bolton's attorney four days before trial and forced Bolton to make a choice between his right to counsel and his right to a speedy trial. (Id. at p. 356.) Bolton "chose" to represent himself rather than agree to a continuance, and was subsequently convicted by jury. (Id. at pp. 349-350.) The appellate court reversed his convictions, holding that under these circumstances, Bolton's waiver of his right to the assistance of counsel was not voluntary. (Id. at p. 361.)

In this case, unlike Bolton, defendant did not elect to represent himself in order to secure his right to a speedy trial. The record clearly demonstrates defendant's motive for representing himself – he wanted to file and argue the numerous motions he had prepared and erroneously believed to be meritorious. As already indicated, when Martin first received defendant's case, defendant asked to represent himself because he had already prepared these motions and wanted them filed immediately. He then reconsidered this decision and allowed Martin to continue to represent him. However, on the date originally scheduled for the preliminary hearing, after Martin explained to defendant that he would not be filing any motions he considered to be frivolous, defendant again asked to represent himself. Defendant again thought better of his decision and agreed to a continuance to allow Martin more time to review and file defendant's motions.

Two weeks later, Martin (through another attorney) requested another continuance. Defendant again asked to represent himself. After removing Martin as defendant's attorney, the court explained to defendant his right to an attorney and the potentially dire consequences of representing himself; defendant signed a written Faretta waiver, and the court granted his request to represent himself. However, defendant's decision to represent himself was not made in order for defendant to assert his right to a speedy trial. We know this because defendant did not assert his right to a speedy trial, but rather granted himself the continuance Martin had asked

for so that he could file his motions. Defendant himself expressed
to the court his motive for representing himself: "I was forced into
this position because my attorney would not file necessary motions
for me."

In sum, defendant did not elect to represent himself in order to
secure his right to a speedy trial. He did so in order to file motions
his attorney indicated he would probably not file on defendant's
behalf. Defendant was thoroughly warned about the dangers of
representing himself. He knowingly, intelligently, and voluntarily
chose to represent himself, and must live with the consequences.
Nor may he assert on appeal that he was denied a full and fair
hearing on the suppression motion because he inadequately or
ineffectively represented himself. Accordingly, the trial court did
not err in refusing to hear defendant's fourth motion to suppress.

(Dkt. No. 11, at 29-44.)

Under <u>Stone v. Powell</u>, 428 U.S. 465 (1976), petitioner's Fourth

Amendment claims are barred.  In <u>Stone</u>, the Supreme Court held that "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, the

Constitution does not require that a state prisoner be granted federal habeas corpus relief on the

ground that evidence obtained in an unconstitutional search or seizure was introduced at his

trial."  <u>Id.</u> at 482.  The Supreme Court instructed that state prisoners were not entitled to federal

habeas relief on Fourth Amendment grounds if they were able to litigate fully their Fourth

Amendment claims in state court.  <u>Id.</u>  Thus, a Fourth Amendment claim can only be litigated on

federal habeas where petitioner demonstrates that the state did not provide an opportunity for full

and fair litigation of the claim; it is immaterial whether the petitioner actually litigated the Fourth

Amendment claim, whether the state courts correctly disposed of the Fourth Amendment issues

tendered to them, or even whether the claim was correctly understood.  <u>Ortiz-Sandoval v.</u>

<u>Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996); <u>Siripongs v. Calderon</u>, 35 F.3d 1308, 1321 (9th Cir.

1994).

Because petitioner had the opportunity to litigate his Fourth Amendment claim,

the Fourth Amendment claim raised in the instant habeas petition is barred.  The California Court

of Appeal correctly rejected petitioner's claim that he was denied the opportunity to litigate the

suppression motion because he ineffectively represented himself during the hearing on the motion.  As noted by the state appellate court, a criminal defendant may not assert on appeal that he inadequately or ineffectively represented himself once he has elected to represent himself.

For the reasons stated by the California Court of Appeal, the undersigned also rejects petitioner's argument that he was denied the opportunity to litigate his Fourth Amendment claim because he was forced to represent himself in order to assert his right to a speedy trial.  The record indicates that petitioner sought to represent himself not to protect his speedy trial rights but so that he could file motions that he believed his lawyer would not file for him.  During the <u>Faretta</u>[2] hearing, petitioner told the court that he wanted to get to the law library so that he could do his research and "put together these motions that are necessary."  (Reporter's Augmented Transcript ("RAT") at 40.)  Immediately after granting petitioner's <u>Faretta</u> motion, the trial court asked petitioner when he would be ready for the preliminary hearing.  (<u>Id.</u> at 46.)  While petitioner expressed concern that his case not be delayed, he agreed to waive time so that his motions could be heard.  (<u>Id.</u>)

Petitioner also suggests that he was denied the opportunity to litigate his Fourth Amendment claim because he was incompetent due to mental illness.  The record contains no evidence to support this claim.  As noted by the California Court of Appeal, petitioner competently litigated his Fourth Amendment claim.  The trial court complimented petitioner on his litigation of the motion to suppress.  On the day jurors were to be sworn in, the trial court stated that it believed that petitioner could competently represent himself.  However, in an abundance of caution based on records from the jail that petitioner was hearing voices, the trial court later appointed counsel to represent him at trial.  For these reasons, petitioner's argument that he was denied the opportunity to litigate his Fourth Amendment claims due to mental incompetence is without merit.

---

[2]  <u>Faretta v. California</u>, 422 U.S. 806 (1975).

C.  Alleged Brady Violation

Respondent contends that while petitioner's Brady claim is exhausted, it may be considered because it is without merit.  In the traverse, petitioner argues that his Brady claim is exhausted.  Because the claim is without merit, the undersigned may address the merits of the claim regardless of exhaustion.  28 U.S.C. § 2254(b)(2) (an application for writ of habeas corpus may be denied on the merits, notwithstanding the failure to exhaust state court remedies).

The United States Supreme Court has held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Strickler v. Greene, 527 U.S. 263, 282 (1999).

Petitioner argues that the prosecution failed to disclose statements by witnesses John Paris and Christine Riker.  However, as noted by respondent, the trial court twice found that no such statements existed.  (RT at 19, 58.)  The undersigned has reviewed the exhibits attached to the petition and finds no evidence supporting petitioner's claim that statements by John Paris and Christine Riker exist.  For these reasons, no Brady violation occurred.

V.  Conclusion

For all of the above reasons, petitioner's application for a writ of habeas corpus is denied.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Because no substantial showing of a constitutional rights has been made, no certificate of appealability shall issue.

////

////

////

16

Accordingly, IT IS ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied;

2. A certificate of appealability is not issued.

DATED: March 14, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

gil2897.ord